Good morning. Jim Monroe, appearing for Lycos, Inc. First, I'd like to apologize, Your Honor, that my partner, who has been handling this matter, Robert Kirby, is tied up in criminal proceedings in Massachusetts, and so I am here in his stead to present the argument.  Lycos requests a reversal of the district court's judgment on the grounds that the California preference statute under which the judgment was based is preempted by federal bankruptcy law. Counsel, I'd just like to start out by saying, isn't the Supreme Court's reasoning in Foblesco just a very strong indication that there is no preemption of preferential recovery provisions? I don't believe so, Your Honor. I think that this case is primarily controlled by the Pincus decision. In the Foblesco case, which we don't dispute, says that common law assignments for benefits of creditors are generally permissible and not violative of the federal bankruptcy law and doesn't impinge on that field. It protects creditors against each other, as the Court said. Yes, it would protect creditors to some extent against each other. The assignment is a private mechanism to allow for the disposition of property of an insolvent debtor. And that was available in common law. The courts have held that at least some state regulation of that common law mechanism is appropriate. Pincus held that if the mechanism or the regulation goes to the extent that a discharge is involved in the state regulation of the assignment procedure, that that regulation is preempted by the Bankruptcy Code. But that isn't this case. That is not this case. Other cases say that that is not the sole criteria, that discharge is not the sole criteria for determining whether a state regulation is preempted by the Bankruptcy Code. Well, they say that, but they don't give an example. They say, well, you know, of course, this is not the only criterion, but for all we know, discharge has been the only situation where we've held the West Federal preemption, where state law gives a discharge. It's preempted. Except for the Goldstein case. That's the Massachusetts case, not even the U.S. case. Well, most people are, because they invalidated the whole scheme, which included the discharge provision. The court was particularly addressing a preference provision, though, in that case. But it looked at the whole scheme, which included a discharge provision. It was basically a state bankruptcy statute, very much like the federal bankruptcy statute, and the Massachusetts Supreme Judicial Court held it. It was the Supreme Court of Massachusetts in a 74 decision. Yes. Held that it just inconsistent with federal law because it did all the same things that the Federal Attorney. So we really. I think that's correct, that there aren't cases that are striking down state statutes governing assignments. There's a practical reason for that, which is that people can leave the state system and go into bankruptcy or even force an unwilling person into bankruptcy in certain circumstances. So there are lots of opportunities to get directly under the federal scheme if the federal scheme is desired. Well, that's true, but I think that was the case in Pincus, too, where the court struck down the state statute, notwithstanding the fact that there was an option. Well, that's an interesting point, too, that's argued in the briefs, and we disagree with the view that assuming the California preference statute or state statute is enforceable and assuming, unlike California's, it differs to some extent from the federal statute, has a longer period of time, has different elements, has different defenses. 544B, assuming that that's what you're referring to, does not. 544B deals with fraudulent conveyances. Well, I guess there's two ways that a state statute could try to be applied in a bankruptcy proceeding. One is the state could say that it directly applies, which I think is clearly preemptive, to a state to try to control directly what happens in a bankruptcy case. The other way is under 544B. Some cases have suggested that 544B allows state preference law to be incorporated into the bankruptcy code, and Sherwood argues that in this case. Our position is that 544B only permits avoidance powers that are available to individual creditors, by the language of the statute, to be brought into the trustee's avoidance powers. I understand that argument. If 544B doesn't govern here, it's 547 that governs. So what happened? If your client was unhappy with this procedure, why didn't you just file for death in the bankruptcy? Why didn't your client just get out from under it? I'm not certain what motivated the client's decision, Your Honor. Whatever subjectively motivated them, it's a weak claim you're raising. It's one that you could have avoided. You're complaining about this procedure, but if you could have avoided the procedure as far as filing for forcing the debtor into voluntary bankruptcy, where's the harm? Well, the California statute's either preempted or it's not, Your Honor. No, but it's not that clear-cut. It's saying it's often preempted depending on how far the conflict with federal law. If you can get out of the state procedure by invoking federal law, it's very hard to say there's a conflict.  Now, Pincus specifically says Congress has occupied the entire field. But we know from Progressive that that's not true, that it's not entirely occupied. The entire bankruptcy field. And even when you say there's field preemption in an incorporated entire field, you still have to know what the limit is. What is the entire field? Look at copyright preemption. It's as wide as it can be, but it doesn't preempt everything having to do with the written word. It doesn't preempt right to publicity law, for example. So you still have to, in determining the scope of field preemption, you have to figure out where do state law and federal law butt up against each other. So conflict analysis is still necessary. Why is it sort of a complete answer to say, look, there's no conflict at all, here state law and federal law don't interfere with each other, because you can always kick out state law by invoking federal bankruptcy law? That's the very same as what was the situation in Pincus. The state provided for a discharge, and so did the federal bankruptcy law. But it was held that that component was so integral to a bankruptcy proceeding that it was displaced and superseded by federal law and was unenforceable. And there was also a right to bring that case into the federal bankruptcy forum, which was not dispositive of the preemption argument. And that's what we're arguing here. This is a completely different kind of question, and it's coming just from me, not in any way officially from the panel, but there's not that much money at stake here compared to what could be in this instance. And I'm wondering if there's been any effort to use our mediation service to try to come to some sort of a resolution. I believe there have been settlement discussions of the case in the past. I do not know, but as I say, I was not involved in the handling of this case. I don't believe it was mediated through the auspices of this Court. Would you be open to mediation? I would have to discuss that with. All right. I would assume that my client would be open to mediation, but I can't speak for them at this moment. I can't imagine why they would not be. I understand. The point on the argument that the fact that discharges aren't the sole criteria for a bankruptcy law is really apparent now where it wasn't at the time of Pincus. The current provisions of both Chapter 7 and Chapter 11 of the Bankruptcy Code with respect to corporations, like Think Link here, in liquidation proceedings both do not involve discharges. The Bankruptcy Code does not provide a discharge of corporate debts in the liquidation scenario, which makes it pretty apparent that a bankruptcy law involves something more than just a discharge and that if a state, for instance, were to adopt Chapter 7 as to corporations and replace the word trustee with the word assinee, then that— I don't know which way that occurs. If the federal law doesn't provide for a discharge in certain circumstances, it doesn't mean that the discharge is not central to the scheme. I mean, for example, if state law provided a discharge where federal law chooses not to, that would be an inconsistency. I mean, for whatever reason, Congress, in crafting the bankruptcy statute, included discharge for the authority, but only in certain circumstances. It removes the situations where the debtor is a corporation, also in situations where there's fraud on the court or the proceeding is brought in bad faith, in situations where the bankruptcy is brought more often than every so many years. Seven years, I believe, is something you can only get a discharge every so often. So Congress limits use of a discharge, but it seems to me that the fact that it limits it just shows how important that tool is, not to be used promiscuously. Correct. I— Well, my point was that a Chapter 7 bankruptcy under federal law as to a corporation doesn't involve a discharge. But the choice Congress made. And— That doesn't mean that discharge itself is not central to the federal scheme. No, what I'm saying is that a state couldn't pass a statute the same as Chapter 7 without a discharge and have it pass muster under the preemption doctrine. I think pretty clearly that the state couldn't just incorporate Chapter 7 and have a competing scheme for discharging debts under its auspices. Why not? I think that's—the reason is because of federal bankruptcy law being supreme. But I'm saying if there's no discharge, the state law wouldn't have a discharge either, right? Correct. Well, the—even though the law is complementary, it could be the very same. As it is here, it's still preempted. Let's say it's identical in every way. Pardon me? Let's say it's identical in every way. Then it would be preempted because it got into the field governed by the Bankruptcy Code, this field preemption, Your Honor. I mean, you say that, but why? And PINCUS stands for that proposition. Well, no, but PINCUS involved a discharge. Correct. You're not in a situation where you're dealing solely with corporate bankruptcies. Federal law doesn't provide for a discharge, and presumably state law wouldn't provide for a discharge. Correct. So you have these two schemes, neither of which provides for bankruptcy—for a discharge. And you say, well, obviously the state law would be preempted. Because the relief would be the same, and PINCUS says that the federal scheme is not to be competed with by a state scheme. Counsel, you cited PINCUS many times, and Judge Nelson asked you early on about the effect of Pobreslo on our analysis. And I would appreciate your answering her question on that. Because in that case, the Supreme Court said that there was not preemption. That is correct, Your Honor. And part of its reasoning, at least, was that there was not preemption, because there was no contemplation of a discharge of any debts on the part of the debtor in that situation. Why shouldn't we take the combination of those two cases as meaning that when the particular procedure of state law that's involved does not lead to or contemplate the discharge of any debts, why shouldn't we take that as meaning that it's not preempted? Well, the Court didn't go that far. What the Court held was a pretty run-of-the-mill assignment for benefit of creditors procedure in a state was not preempted by federal law. Well, what's not run-of-the-mill about this? This one involves a state electing to adopt a preference recovery statute, which adds additional burdens and powers with respect to the right to bring out-of-state creditors into California and defend preference actions under state law. It doesn't apply just to out-of-state creditors. It applies to everybody. The California statute would apply to California residents and foreign citizens. Do business in the state. Well, not necessarily do business in the state. You have to have received money from the debtor. You have to have minimum contacts for the state. It sounds like you have to have minimum, under international law, minimum contacts to establish your protection in the state. That may well be, Your Honor. That's probably correct. Come on. This is law school. You've got to have minimum contacts, right? So once you've established minimum contacts, then you are treated just like everybody else in the state. You're not out-of-state or anything. You're treated just like somebody in the state. Correct. So there's no unfairness in that. Well, the point is, though, that by definition, you've gotten due process because you have minimum contacts. We weren't arguing it was a due process problem. What we were arguing is that the bankruptcy code evinces an intent by Congress to provide for a uniform preference recovery mechanism. Here's the basic problem. Bankruptcy law operates against the background of state law with regard to property, with regard to contract, with regard to all sorts of credit remedies. If California wanted to pass a law affecting all creditors saying mortgages are extended by five years because of an economic problem here, it probably could do so. So certainly there would be nothing in the bankruptcy code to stop them from doing it. Creating additional relief for debtors, additional burdens on creditors. Why isn't this just another, or let's say it has fraudulent conveyance law where it says a creditor can set aside the fraudulent conveyance, even though the Bankruptcy Act also provides authority to set aside fraudulent conveyances. So if bankruptcy law operates against this background of commercial law, which is governed by the state, there's nothing you can do about it. Well, that's the difficulty of the question. We do know that there's a limit to what the state can do, and we know the discharge provision is one. We have courts that say the discharge isn't the only factor that's involved, the Seventh Circuit decision on this issue. Other courts have stricken down various provisions of state insolvency statutes. They tell us, for instance, what? They say, oh, this is not the only thing, but they don't give us much confidence. That's true. They don't know what the other thing is. Correct. And our contention is that this preference statute is a matter that is within the bankruptcy code as adopted by Congress, and that states are not permitted to regulate preference recoveries in their collective insolvency proceedings. And it's based on the Pincus decision. Okay.  Thank you, Your Honor. Good morning, Your Honors. Irving Saulmeier for the Assinee Sherwood Partners. I'm here with my colleague, Janice Abrams, who is with me on the brief. If I can, I will do my best to clarify the issues. I noticed that most of the entire discussion related to the preemption issue. Indeed, that's half the case. The orthodox approach to preemption is to discuss expressed preemption, when Congress specifically tells you that it is preempting a specific state statute, or implied preemption, field preemption and conflict preemption. And the question is, what kind of subdivisions under implied preemption? Congress never said state laws that have a discharge are preempted. Not at all, Your Honor. Not only that. We don't have expressed preemption. That's correct. There's no point talking about it. We know it's not necessary because the Supreme Court has said it's not. Not only that, but whether we call it field or conflict preemption, or intrude upon the field or supplement or anything, I think it was Justice Black who said it all comes down to congressional intent. And that's what we're looking for here. And courts do not lightly, federal courts do not lightly find state statutes preempted. I think Judge Graber recently held it. You need to find that that congressional intent is clear and manifest. Let me just ask a question here about LICOs. Don't they raise a legitimate concern about the lack of protections for preference creditors found in the California statute as opposed to the bankruptcy law? I don't believe so. Because? Because they could always, in the vernacular, dump it in the bankruptcy. All right. As Judge Kuczynski suggested, they could always go bankrupt. They could always. Now, Pincus could not. Why couldn't they, Pincus? Pardon? Why not? Because he'd received a discharge within six years. That's why he turned to the Arkansas statute. He'd received a discharge, so he filed under, and that's in the very beginning of the Pincus discussion. The Supreme Court mentions that. Couldn't the creditors have brought him into? No, they also mentioned that the international shoe, the creditor in that case, had a claim under $500, could not itself file an involuntary under the 1898 Act, and the other creditors had all consented to the assignment. So no one could activate the bankruptcy system in that case. And that seemed to bother Judge Butler, who wrote the opinion in Pincus. I point out that Judge Brandeis and two other judges dissented, while in Pobreslo it was a unanimous court. In the unanimous Supreme Court, in other words, I question personally the soundness, even in theory, of Pincus. But we don't have to face that here. That doesn't help us. We can't question the soundness of Pincus. No. No question about that, Your Honor. I never. Unfortunately, the argument that you're making is, oh, we don't have to, in answer to Judge Nelson's question, I mean, she said, look, she asked the question, don't we need to worry about the fact that the trustee, or whatever receiver in the state law, doesn't have the protections of federal statute? And he said, oh, don't worry about it. It's okay, because they can always go into federal court by filing involuntary. But if that's the answer, then discharge cases are wrong, because in discharge cases, theoretically, you can always go into federal court. You know, the Supreme Court. So there's no preemption ever. That's my own opinion. And, by the way, I don't think the Supreme Court today. Well, what's the matter with Judge Nelson's question? I don't think the Supreme Court today would decide, if it had it as an original proposition, would decide Pincus as Pincus was decided. That doesn't help us. No. And it's not before us. I point out in Johnson v. Starr, decided by the Supreme Court, Justice Butler again, the same day as Pobreslo, they sustained a Texas preference statute, which contained a discharge provision as to those creditors who consented to the assignment and received at least one-third of their claim distributed. The only way you could preserve your claim without a discharge under the Texas assignment and preemption statute was not to take distribution, to opt out of the assignment, as it were. So that went even further than Pobreslo in holding no preemption. But if we're looking to congressional intent and we're looking to a principled argument to say no preemption here, we find not only that Congress gave the trustee the power to use state preference laws. I'm sorry. Where does it do that? That is 544B. 544B deals with fraudulent compliance. No, Your Honor. That's 548. 547 is preferences. 548 is fraudulent transfers. 544B is trustee exercising the rights of other creditors. And if it's invalid under state law, under 544B, the trustee can exercise those things to avoid either a fraudulent transfer. I'm sorry. Yes. You must have a different 544B than I do, won't you? No, I don't think so. It doesn't say rights of other creditors. Right in the trustee is a long lien creditor and successor to other creditors, 544B. The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law, i.e., state law, by a creditor holding an unsecured claim that is allowable under Section 502. Okay. I'm listening for the word creditors. Well, creditors. Creditors, collectively. I didn't hear it. That's in the title, in the bold. It says trustee is a lien creditor and as successor to certain creditors, plural. In the bold type at the heading. What help does that give you? The statute clearly talks about a creditor holding an unsecured lien. It is not a collective statute. What it says is trustee can do whatever an individual creditor can do under state law, which is to avoid a fraudulent conveyance or a, well, no. Under Ohio law and under Kentucky law. But there's individual rights to preference. Okay. We have, and it's all in the record. We have given you a volume. Whatever it is, it is a right held by an individual creditor, not by a collective of creditors or representative of creditors. The statute says a creditor with a provable claim, unallowable claim. It says unsecured claim. Yes. What does it say? With an unsecured claim. What does my statute say? A creditor. An unsecured creditor. Yes. An unsecured creditor. Okay. Now, Sherwood is not an unsecured creditor. Sherwood's not a trustee. Sherwood's not an unsecured creditor. It is a representative of unsecured creditors. In Ray Canville, which we cited to Your Honor. But Sherwood is not an unsecured creditor. That's right. Okay. So if there were a bankruptcy proceeding in this case, if, for example, tomorrow the Likos were to file for an involuntary, the trustee would not be able to, the bankruptcy trustee would not accrue the right under 1800, would not accrue any, would not get the rights of Sherwood, whatever those rights are by state law. That could be the result, not necessarily. Well, tell me why not. Tell me under what theory. Very good. The theory that the trustee could possibly come in and claim the benefit of the state preference. Let me answer, Your Honor. Under 544B. On two bases. And one. It's always best to have just one. Well, sometimes the belt and stick benders help. If you need them both, I suppose. If one doesn't work. Yeah. In any event, the bankruptcy court in the Eastern District of Pennsylvania, in Ray Canville, cited to Your Honors in our brief, said that since the S&E for benefit of creditors is the representative of unsecured creditors, we will allow the trustee to exercise the rights which an S&E as a representative of unsecured creditors. I saw that. I thought it was something they might say in Pennsylvania. Well, then let me go further. Why does that make any sense? For the same reason that it — But the statute talks about an individual creditor. Indeed. And the statute also says that a trustee can avoid preferences and fraudulent transfers. Yet Your Honor, who has sat in the bankruptcy court, knows that a creditor's committee has been allowed to exercise the rights of a trustee and avoid preferences. Indeed, individual creditors have. That's authorized by Congress. Pardon? That's authorized by Congress. Not at all. No? You won't find that anywhere. No? No. No. You mean all this law school would be? Sorry. But the courts have held that since the trustee could exercise it, a creditor in the name of the trustee could exercise it. The S&E in the name and for the benefit of the creditors. But the issue is not whether the trustee could act under the California statute. The trustee could act under the Ohio statute. The trustee could act under the Kentucky statute. Where individual creditors are given the right to avoid the preference. Has the Supreme Court recently ruled that the definition of preference is a question of Federal law and not a question of State law? Not that I know of. I'll tell you which one in a minute. Go ahead. It was cited by the Sixth Circuit. Are you thinking of the 506C issue? The surcharge issue? The Supreme Court did rule on that recently. That one said that a trustee could surcharge a secured creditor if it benefited from the trustee's administration. And creditors had been acting to surcharge other secured creditors in a bankruptcy case. Supreme Court recently held no. Trustee only. But I'm not aware of any. I'm sorry. I guess it wasn't that recently. The case I am thinking about. Sixth Circuit? That's the one. Barnhill v. Johnson? Which case? Barnhill v. Johnson. 1990, the Supreme Court case. Says the definition of what is a preference is a question of Federal law. I'm sorry. I am not familiar with that case. And I can't comment on that. Counsel, before you run out of time, I'd like to ask you the same question I asked opposing counsel. And that is whether it might be a benefit to these both parties to engage in mediation through the services. We did. One, in my business, I'm a bankruptcy lawyer. We always settle preference cases. We dealt with the Ninth Circuit mediator. Okay. And we did have telephonic discussions. We were unable to resolve the issues. We did not go to formal mediation. From my experience in this case, I think the parties just I think it has to avoid your Honor's decision. Okay. It's with great sadness that I say that. That's what we're here for. It just seemed to me there wasn't. Yeah. Compared to the size of these entities, I didn't see that there was that much money at stake. Oh, of course. We certainly don't. But one other section I do before I run out of time. I want to call Your Honor's attention to Section 305, the abstention provision, as reflecting on the intention of Congress. The bankruptcy court has a right to abstain in the bankruptcy case. If the bankruptcy judge finds it's in the best interest of the creditors and the debtor. That right to abstain allows the assignee to come into the bankruptcy court and say they're all better off in a less expensive assignment procedure than in bankruptcy. If the court agrees and we do this all the time, the court will abstain or even dismiss the bankruptcy. Similarly, if a particular transaction is avoidable under the California preference statute. Of course, the preference was made within 90 days of the assignment. But more than 90 days of the petition in bankruptcy, so the trustee could not avoid it under Section 544B, even if it got around the Judge Kaczynski argument. The bankruptcy court could dismiss the bankruptcy. The bankruptcy court could abstain so that that preference could be set aside, if it were important enough. Congress clearly intended and recognized state court assignments, recognized state court laws that would impact and avoid preferences as well as fraudulent transfers. Do you want to spend a minute on the summary judgment issue? Yes, Your Honor. I'd be delighted to. It was clearly abused discretion, didn't it? I mean, striking out the only evidence offered by Lycos and for what struck me as being wholly implausible reasons. Fully implausible. Implausible. Wholly implausible. This is the guy who's in charge of accounts for Lycos. He's in charge of customer accounts. And he says, look, we put their logos on our websites. They got a zillion hits. And this is worth this much to us. This is worth this much in terms of advertising revenue. Why isn't that enough to create and accomplish your facts? Because they didn't appeal on the contemporaneous exchange of new value. And what Your Honor just said and what the declaration was directed to primarily was exactly that. They didn't appeal? I thought they did. No, they only appealed on subsequent. They did not appeal on contemporaneous exchange of new value. Oh, I'm sorry. But but but but but the stuff put on the Web page happened after they got the million. I thought their claim was we got the million. And after that. Go ahead. I'm sorry. I didn't mean to interrupt. Go ahead. After that. After that, we posted their their logos on our Web site. And this is how much this is worth. No, I don't think so. I think what he said. I assume I'm right. Why don't you answer my question? Okay. Do you agree with me if I if if if I'm right in in in saying what they're appealing? The district court was just wrong. If they said that after the preference. They don't submit as a preference. But yes, after the payment. After the. They agree it's a preference. They're not arguing that it's preference. That's not on appeal. All right. They're saying after the preference. After the transfer. Right. We rendered new value. Right. Because we turned on the lights. We did A, B and C. And if you read the declaration, each showing each impression. Is you you show the logo. You show the ads on your screen. Under the original contract before the preference. They had guaranteed. One billion three hundred and seventy one million impressions. A year. That's four million impressions a day. They made no such guarantee under the amended agreement. And there is no evidence that they gave a single impression. None. There's no evidence that there were anything happened after the agreement. What about this declaration from the. Gotham. Gotham. That's right. All he says, in my opinion, the fair market value of this contract. Is three million seven hundred thousand dollars. Then at the very end of his declaration and a half a page. Under subsequent events. He says, in my opinion, the value of our. Really what we did. Afterwards. Receipt of a million dollar payment of issue in this litigation. And so on. Lycos place maintained and promoted links to the co-branded site. And otherwise fully performed all its obligation under the amended agreement. And then he goes on. This is paragraph twenty five. And he goes on and says what this is worth. Yes. It is enough to create a tribal issue of fact on on new value. If there was an appeal on C1. On contemporaneous. Why is it on new value? They say, look, new value applies to contemporaneous new value or subsequent new value. But new value. The focus is always to get to your point, because they are. He certainly did take his his valuation. Three million seven hundred three hundred and seventy one. I'm sorry. Three million seven hundred thousand dollars value. Then after the preference, he took a proration to 51 days and he prorated it down to eight hundred thousand some odd dollars. He says, in my opinion, the post preference value is eight hundred thousand some odd dollars. OK. Why isn't that a tribal issue of fact? It's not a tribal issue of fact because he does not opine, does not give any opinion or any facts to show replenishment of the estate. He doesn't show this enable them to stay in business. This enabled them to operate their their own business. Doesn't show any of that advertising. They this is advertising for their business. I understand how you could possibly argue otherwise. These were links that were designed to attack customers and they had gotten enough customers. They would have stayed in business. I suppose you had a billboard, an electronic billboard. And you were and you didn't light it up. No. And you're in the nighttime unless you turn on the lights and unless people see it doesn't do you much good. He doesn't tell you anywhere how many impressions they gave each day. He doesn't do any of that. He doesn't show how many people even contacted. Maybe a child will find out. Pardon? Maybe a child will find out. OK. I submit it's really like a lawyer for retention. If you don't use them, it doesn't help you. Thank you. Thank you. You know, you're out of time. If you'd like a minute for a bottle, we can take it. OK. Occasion side will send submitted. We're going to be adjourned. We will actually take a short break. Five minutes. Give the lawyers a chance to leave and choose to do so. And as a student to come forward and move back just a few minutes. You are entirely welcome to do some of the summer if time permits. I'm sure the students will find it very helpful. Mr. Somali has been a distinguished member of the bar of this court for more, more, more years than many of us can remember. So I think if you could stay with me, I would appreciate it. Anyway, we'll take a short break. We'll be right back.
judges: D.W. Nelson, Kozinski, Graber